# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA DIGITAL ABSTRACT, LLC, an Oklahoma limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 18-CV-398-TCK-JFH |
| IMERSION GLOBAL INCORPORATED, a Texas corporation, and | ) ) ) ) |
| ANIL K. ADONI, an individual, | ) ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Before the Court is the Motion to Dismiss Claims Brought in Plaintiff's Amended Complaint filed by defendant, Anil K. Adoni ("Adoni") pursuant to Fed. R. 12(b)(6). Doc. 16. Plaintiff Oklahoma Digital Abstract, LLC ("ODA") opposes the motion. Doc. 20.

## **I. Allegations of the First Amended Complaint**

ODA is a limited liability company organized and existing under the laws of the State of Oklahoma, with its principal place of business in Tulsa County, Oklahoma. Doc. 2, ¶ 1. Imersion Global Incorporated ("Imersion") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Harris County, Texas, and Adoni is domiciled in the city of Spring, Harris County, Texas. *Id.*, ¶¶ 2-3.

The State of Oklahoma utilizes an "abstract of title" in matters relating to title to real property, and as a result, there are one or more abstracting businesses in each county in the state. *Id.*, ¶ 6. In order to engage in the abstracting business, one must obtain a permit from the Oklahoma

Abstractors Board ("OAB") to develop an abstract plant for a specific county and, after the construction of the abstract plant is complete, have it certified by the OAB to engage in the business of abstracting in that county." *Id.* An "abstract plant" is "a set of records in which an entry has been made of all documents or matters which legally impart constructive notice of matters affecting title to real property, any interest therein or encumbrances thereon which are filed, recorded and currently available for reproduction in the offices of the county clerk and the court clerk in the county for which such abstract plant is maintained." *Id.*, ¶ 7 (citing 1 O.S. § 21(2)). Once an applicant obtains a permit to develop an abstract plant for a given county, it may procced to build its abstract plant for that county. *Id.* By statute, the holder of a permit to develop an abstract plant is afforded free access to the applicable county records to make copies of all relevant documents. *Id.* With modern digital technology, the process generally involves just scanning images of the documents. *Id.*

Scanned images must be "electronically stapled," a process by which single images are electronically connected to one another to form a multi-page document. *Id.*, ¶ 8. The copied or scanned documents must also be indexed either manually or through the use of software. *Id.* The permit holder is prohibited by statute from relying on the existing indexes in the county records to create its own indexes, and instead must create its own indexes using its abstract plant of scanned images. *Id.*

Because accuracy in land records is critical, quality control is essential throughout the process of scanning documents, stapling images and creating indexes. *Id.*, ¶ 9. In order to obtain a certificate of authority, the applicant must demonstrate to the OAB, among other things, the accuracy of its abstract plant, its indexes and its ability to create a reliable abstract of title for any given property. *Id.*

ODA was formed in 2013 for the purpose of developing abstract plants in Oklahoma counties and, as each abstract plant was completed and a certificate of authority obtained from the OAB, it operated abstract businesses in each such county. *Id.*, ¶ 10. Initially, ODA sought permits to build abstract plants in Rogers, Wagoner and Garfield Counties in Oklahoma, but by early 2016 it abandoned the effort in Garfield County. *Id.*

Imersion holds itself out as an experienced company in building such databases based on county-level data from local governments. *Id.* at 11. Imersion "appears to have only a couple of employees in the United states, while the rest are offshore." *Id.*

In 2013, ODA's manager, Dax D. Junker, and Adoni began discussions regarding the indexing projects, and on October 16, 2013, the companies executed a Non-Disclosure/Non-Compete Agreement. *Id.*, ¶ 12. After Imersion made an initial assessment of the county records and available data in Rogers, Wagoner and Garfield Counties, the parties executed letter agreements which were signed by Adoni on behalf of Imersion and Junker on behalf of ODA. *Id.*, ¶¶ 12-13. In each letter agreement, Adoni identified the work to be done, provided an estimate of the costs based on the information then known to Imersion, with the caveat that costs could change as more information became available regarding the actual county records, and provided a timeline for completing the project. *Id.*, ¶ 12. The estimated costs for each of the counties were $343,975.75 for Rogers County, $287,506.67 for Wagoner County and $348,744.93 for Garfield County.*Id.*

Quality control review of Imersion data for Rogers and Wagoner Counties commenced in March 2015. *Id.*, ¶ 15. In February 2016, Dax D. Junker Revocable Living Trust, Dax D. Junker, Trustee, sold 100 percent of the membership interest in ODA to the 2003 Revocable Trust of Randy J. Dittman, Randy J. Dittman, Trustee. *Id.*, ¶ 16.

Once under new ownership, ODA pressed for the completion of the abstract plants, but its quality control review of Imersion's work repeatedly encountered unacceptable error rates in the data, including stapling errors, keying errors and merging program errors. *Id.*, ¶ 17. ODA attempted to work with Adoni and Imersion through early 2017 in an effort to identify and correct the errors in the abstract plants. *Id.*, ¶ 18. However, Imersion failed to achieve the level of accuracy necessary for an abstract plant in Oklahoma, and ODA ceased using Imersion by mid-2017. *Id.*

Under the letter agreements, Imersion was paid over $800,000 for the Rogers County and Wagoner County abstract plants. *Id.*, ¶ 19. However, "after 4 years of fruitless effort by Imersion, ODA still does not have complete and accurate abstract plants in either county sufficient to obtain a certificate of authority for either. *Id.* Because of the high error rates from Imersion and its failure to correct such errors, ODA hired eData Services U.S., LLC ("eData") to complete the services that ODA had engaged Adoni and Imersion to perform. *Id.*, ¶ 20. As a result of the extreme number of errors, eData will have to rekey all of the Rogers County and Wagoner County documents and ensure that the stapling was correct. *Id.* Due to Imersion's failure to provide accurate and complete abstract plants, ODA anticipates paying hundreds of thousands of dollars to correct all the Rogers County and Wagoner County errors. *Id.*

At all times, Adoni represented that he had substantial experience in the title industry to perform the services that had been contracted by ODA. *Id.*, ¶ 21. Adoni made over six trips to Tulsa, Oklahoma from late 2013 through 2017 in connection with the projects. *Id.*

ODA alleges that Adoni made material misrepresentations of fact to ODA that Imersion's experience, skills and resources enabled it to timely carry out the work of building abstract plants in Wagoner and Rogers Counties with an accuracy rate of 98 percent. *Id.*, ¶ 30. It alleges that it

reasonably relied on said representations to its detriment by entering into contracts with Imersion and paying it hundreds of thousands of dollars pursuant to the contracts, when Imersion was not furnishing the quality of work promised. *Id.*, ¶ 31. It contends that the representations by Adnoi to ODA were false and, at the time they were made were either known by Adoni to be false or were made by him with reckless disregard for their truth or falsity. *Id.*, ¶ 32. ODA alleges it has been damaged by its reasonable reliance on Adoni's representations. *Id.*, ¶ 33.

ODA further alleges that Adoni is Imersion's founder and president, owns either all or a dominant majority of its stock, is one of only two officers of the corporation, and is in actual control of its business operations, including but not limited to what contracts it will enter into and the terms of the contract. *Id.*, ¶34. Adoni was the sole or nearly sole spokesperson of Imersion in dealing with ODA regarding the contracts at issue in this case. *Id.*, ¶ 35

ODA asserts claims against Imersion for breach of contract with respect to the Rogers and Wagoner County projects and a claim for alter ego liability against Adoni. *Id.*, pp. 7-11.

## II. Applicable Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be

true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

### III. Analysis

Defendant Adoni contends that ODA's alter ego claim against him should be dismissed as premature pursuant to 12 O.S. § 682(B); any claim against him based on the alleged fraud is barred by the applicable statute of limitations; and the Amended Complaint fails to plead fraud with particularity.

The statute at issue, 12 Okl.St.Ann. 682, provides:

> **A.** Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; it may determine the ultimate rights of the parties on either side, as between themselves, and it may grant the defendants any affirmative relief to which he or she may be entitled. In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper. The court may also dismiss the petition with costs, in favor of one or more defendants, in the case of unreasonable neglect on the part of the plaintiff to serve the summons on other defendants, or proceed in the cause against the defendant or defendants served.
>
> **B.** *No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego.* Providing, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation, not within the scope of their role as an

6

officer, director or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrence.

*Id.* (emphasis added).

Under § 682(B), "a plaintiff has not asserted an individual claim against a shareholder, officer, or director where the claims against the shareholder, officer, or director mirror those against the company; the complaint asserts the company is an alter-ego of the shareholder, officer, or director; and the complaint does not allege different conduct as between the company and the shareholder, officer or director." *Hetronic Intern., Inc. v. Hetronic Germany GmbH*, 2015 WL 6835428, *3 (W.D. Okla. Nov. 6, 2015) (citing *ZHN, LLC v. Randy Miller, LLC,* 2015 WL 1033080, *2 (W.D. Okla. March 9, 2015)).

Here, as in *Hetronic*, Plaintiff's claims against Adoni mirror those against Imersion; the complaint asserts the company is the alter-ego of Adoni; and the complaint does not allege different conduct as between the company and Adoni. Plaintiff has not yet obtained judgment, nor has judgment been returned unsatisfied. Accordingly, the claim against Adoni must be dismissed as premature.

Having concluded that ODA's claim against Adoni must be dismissed as premature pursuant to Fed. R. Civ. P. 12(b)(6), the Court declines to address Adoni's remaining arguments for dismissal.

## IV. Conclusion

Defendant Anil K. Adoni's Motion to Dismiss (Doc. 16) is hereby granted.

ENTERED this 26th day of November, 2019.

TERENCE KERN
**United States District Judge**