# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA DIGITAL ABSTRACT, LLC, an Oklahoma limited liability company, </br></br> Plaintiff, </br></br> v. </br></br> IMERSION GLOBAL INCORPORATED., a Texas corporation, </br></br> Defendant. | Case No. 18-CV-398-TCK-JFJ |

## **OPINION AND ORDER**

Before the Court is the Motion to Exclude Opinion Testimony of Chaney Haynes filed by Defendant Imersion Global Incorporated ("Imersion"). Doc. 41. Plaintiff Oklahoma Digital Abstract, LLC ("ODA") opposes the motion. Doc. 48.

**I. Background**

This lawsuit arises from a dispute over work performed by Imersion for ODA pursuant to two letter agreements between the parties. ODA alleges that Imersion's founder and president, Anil K. Adoni ("Adoni"), made material misrepresentations of fact to ODA about its ability to timely carry out the work of building abstract plants in Wagoner and Rogers Counties with an accuracy rate of 98 percent. Complaint, Doc. 2, ¶ 3.

On October 16, 2013, ODA and Imersion entered into two letter agreements, pursuant to which Imersion was to assist ODA in developing abstract plants for a database for abstract plants in Wagoner County and Rogers County, Oklahoma. Imersion was tasked with, *inter alia*, taking scanned images of real property records provided by ODA and creating an electric index of those

documents. Plaintiff contracted with an entity known as CourthouseDirect.com, Inc. ("CourthouseDirect.com") to use a software platform created by CourthouseDirect.com for hosting the indexes.

Imersion loaded the Wagoner County index onto the CourthouseDirect.com platform. However, in February 2016, before the Rogers County index could be completed and uploaded to the CourthouseDirect.com platform, control of ODA was transferred to Randy Dittmann. At the time, Dittmann controlled several other Oklahoma abstract plants which utilized a software platform known as halFILE. Dittmann decided that the Rogers County and Wagoner County indexes should use the halFile platform instead of the CourthouseDirect.com. Subsequently, Plaintiff ceased all communications with Imersion, and on August 1, 2018, it filed suit against Imersion and its principal, Anil K. Adoni.[1]

In its Complaint, ODA asserts that because of high error rates in the abstract plants and its failure to correct those errors, ODA hired eData services, U.S., LLC to complete the services; that eData will have to rekey all of the Rogers County and Wagoner County documents and ensure that the stapling was correct, and that ODA anticipates paying hundreds of thousands of dollars to correct the errors.

On August 12, 2019, ODA's designated expert, Chaney Haynes, submitted an expert report to counsel for Imersion. Doc. 41-1. In the report, Haynes stated that an ODA employee, Cheryl Jones had reviewed 743,717 documents in Rogers County and identified a total of 67,849 errors, broken down as follows:

    a. Grantors added/corrected        11,365
    b. Grantees added/corrected        13,739

---

[1] The Court granted Adoni's Motion to Dismiss the claim against him on November 26, 2019. Doc. 67.

|   |   |   |
|---|---|---|
| c. | Legals added/corrected | 29,119 |
| d. | Case number added/corrected | 5,475 |
| e. | Prior Ref added/corrected | 4,648 |
| f. | Stapling errors | <u>3,503</u> |
|   | Total | 67,849 |

*Id.* at 12. Haynes also noted that according to Jones, ODA had to have eData rekey 597 books due to stapling, merging and data errors and the ODA team had to manipulate 1,416 documents in Rogers County during the quality control process due to incorrect stapling by Imersion. *Id.*

Haynes further stated:

> I have personally observed the search of the Courthouse Direct Database for Wagoner County to "create" an abstract by searching a specific legal description. We compared the documents pulled up by legal description against the actual certified abstract for that specific property. The result was that the Courthouse Direct Database search did not include a substantial number of the relevant documents found in the abstract. This "test" was run on 5 different properties. The results were the same. The Courthouse Direct search by legal description did not result in finding all documents. In fact there were an alarming number of documents that were missing. It is essential to have ALL documents effecting the chain of title in the abstract. Just one missing document may result in a lien or encumbrance that affects title to the property and therefore a potential claim against the abstractor for negligently omitting an instrument affecting title. I would also add that in a number of cases, the instrument could eventually be found in the Courthouse Direct Database, but due to keying errors in the legal description, the document could not be located through the initial search. If we did not have a certified abstract to compare to the database search, we would never know that instruments were missing.

*Id.* at 13.

On September 9, 2019, Imersion took Haynes' deposition, and on September 26, 2019, it filed the instant motion, arguing that Haynes' opinions are not reliable.

ODA asserts that Imersion's criticisms go, at most, to the weight to be given his testimony rather than its admissibility.

## II. Applicable Law

Federal Rule of Evidence 702 ("Rule 702") provides:

3

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). These gatekeeper duties require the Court to determine both (1) that the expert witness is qualified to offer the opinions he or she is espousing and (2) that the proponent of the expert witness has proved by a preponderance of the evidence that expert's opinions are both relevant and reliable. *Kumho Tire*, 526 U.S. at 141, 152. When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); FED. R. EVID. 104(a).

"Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology renders the expert's testimony inadmissible." *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003).

This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Dodge v. Cotter Corporation,* 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Kumho Tire*, 526 U.S. at 150). "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine

4

reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire, Id.* at 141-42 (emphasis in original).

## III. Analysis

Imersion argues that Haynes' testimony should be excluded because:

A. Rather than developing his own opinion, Haynes is merely "vouching" for ODA's litigation position.

B. Haynes' opinion about the Wagoner County Database is unreliable because he lacks any experience with CourthouseDirect.com.

C. Haynes' opinions regarding the Rogers County Database are unreliable because he lacks any knowledge of the database.

D. Haynes must be prohibited from testifying regarding the communications he recites in his report.

E. Haynes should be prohibited from testifying regarding work he performed after the submission of his expert report.

**A. Failure to Develop Own Opinion**

Rule 26(a)(2)(B) requires an expert report to be "prepared and signed by the witness." The Advisory Committee Notes to Rule 26 state:

> Rule 26(1)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Rule 26 Advisory Committee Notes.

Rule 26 does not preclude attorneys from assisting in drafting an expert's report, but "preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report." *Rodgers v. Beechcraft Corp.*, 2016 WL 7888002, *4 (N.D. Okla. Oct. 27, 2016) (unpublished). Plaintiff bears the burden to show that Haynes' methodology was "scientifically

5

sound" and his opinion is based on "sufficiently reliable facts." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). While an expert may rely on the work of others, "the expert must be able to testify to the veracity of that work." *St. Paul Fire and Marine Ins. Co. v. Nolen Group, Inc.*, 2005 WL 1168380, *9 (E.D. Pa. May 13, 2005). Importantly:

> The expert's report cannot be "ghost-written" by counsel or prepared without prior substantive input from the witness. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement.

*Rodgers*, *supra* (citing *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 293 (E.D. Va. 2001) and *Manning v. Crockett*, 1999 WL 342715, *2-3 (N.D. Ill. May 18, 1999)).

"In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *U.S. v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999).

During his deposition, Haynes admitted that, with respect to his first opinion, he performed no independent analysis regarding the subject of his opinions, and instead, was merely repeating information that ODA provided to him.[2] Imersion argues Haynes' failure to verify the ODA information renders his opinion inadmissible. ODA, in response, contends that Haynes was not required to perform any studies, statistical or scientific analyses, theories or technical computations, and that any asserted deficiencies in the facts presented to him go to the weight to be given to the testimony rather than its admissibility.

---

[2] ODA provided Haynes the results of a review of the Rogers County database by the ODA Quality Control team, which included Cheryl Jones, a Manager with American Eagle Title and Abstract and which identified a total of 67,849 errors in the database Imersion had developed.

The Court disagrees. Haynes' proposed testimony concerning error rates is listed as an "Opinion" in his report, and Haynes acknowledged in his deposition that he did nothing to verify the accuracy of the data provided by Quality Control team, which prepared the report which forms the basis of Haynes opinion.

Under Rule 26, the expert cannot be a mere conduit for the opinion of the attorney or others. *See* Advisory Committee Note to 1993 Amendment to Rule 26, Paragraph (2). Therefore, it is improper for an attorney to prepare the expert's opinions for him and then have the expert sign the drafted report on his own. *Skycam, Inc. v. Bennett*, 9-CV-294-GKF-FHM, 2011 WL 2551188, *6 (N.D. Okla. June 27, 2011).

In this regard, *Rodgers v. Beechcraft Corp.*, 15-CV-129-CVE-PJC, 2016 WL 7888002 (N.D. Oklahoma, Oct. 27, 2016), is instructive. In *Rodgers*, the defendants sought to exclude testimony from the plaintiff's expert that "merely parroted from other experts or the attorney." *Id.* at *8. The plaintiff argued the testimony was permitted under Rule 703 because an expert may "rely on the opinions of experts in other fields." *Id.* The Court, however, pointed out that according to the rule's advisory notes, such information can only be used as "'background material' for arriving at other independent opinions." *Id.*

Here, as in *Rodgers*, Haynes—without any analysis or independent review—accepted the information set forth in Cheryl Baker's report and adopted it as his own. Accordingly, his first opinion as to errors in Imersion's database is subject to exclusion.

**B. Opinions Regarding Wagoner County Database**

In his expert report, Haynes also stated that he had observed a search of the Wagoner County database on the CourthouseDirect.com platform to "'create' an abstract by searching a specific legal description." Doc. 41-1 at 13. According to Haynes, the database search results

were then compared to the actual certified abstract for that property. *Id.* Haynes concluded that "the Courthouse Direct Database search did not include a substantial number of the relevant documents found in the abstract," and that the "test" was run on five different properties with the same results. *Id.* He reported "an alarming number of documents that were missing." *Id.*

In his deposition, however, Haynes admitted that:

- He had not conducted the search of the Courthouse Direct.com platform himself, but rather observed Cheryl Jones doing so. *Id.*, 144:19-145:23;

- He did not select either of the two legal descriptions that were input; did not remember which legal descriptions were input, in what manner they were input, or which documents were missing from the searches. *Id.*, 145:24-146:8, 149:18;

- He did not participate in determining the methodology for the searches or in the searches themselves; *Id.*, 149:24-150:2;

- He took no notes at the meeting and would be unable to recreate the specific searches. *Id.*, 151:3-7; and

- Additionally, Jones, Dittmann and the attorneys were in the room, and reviewed the results, pointing out errors to him. *Id.*, 146:9-24.

Jones testified that she provided no explanation to Haynes about how the CourthouseDirect.com system worked. Doc. 41, Ex. 3, Jones Dep. 136:6-137:9. When asked whether he did anything to verify that the information contained in the document was accurate and correct, Haynes responded that he "read the document provided to him and that everything that was set out appeared to be accurate," but admitted that he did nothing to actually confirm the accuracy of the information. *Id.*, 143:6-24. He further admitted that if the results he reviewed actually contained errors, it would change the ultimate opinion stated in his report. *Id.*, 144:3-9.

The Tenth Circuit has stated:

The heart of expert testimony is the *foundation*. Whether a witness can parrot the *results* of a model does not mean the he is qualified to explain how the model works or to opine on the statistical validity or interpretation of the results."

*Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Haynes, in his report about the Wagoner County database, is simply parroting the results of the search performed by Jones.

Additionally, while Haynes testified that it is essential for the person using the database to know how to operate it, he admitted he had no training or experience with the Courthouse Direct system, has done no research about how the platform functions, and has never read any instruction materials for it. *Id.*, 83:17-84:2; 160:9-23; 152:12-153:8. Although he relied on Cheryl Jones to perform searches, he has no knowledge of her background or whether she has any abstracting experience. *Id.*, 104:24-105:19; 152:23-153:12, 160:224-161:2.[3]

Accordingly, the Court concludes that Haynes' opinions about the Wagoner County database do not meet Daubert standards and must be excluded.

### C. Opinions Regarding Rogers County Database

Haynes' report refers sporadically to the Rogers County Database. *See*, *i.e.*, Ex. 1 at 8-9, 11. However, he testified he has no direct opinions on the Rogers County database because he does not have enough knowledge about it to render an opinion. Ex. 2, Haynes Dep., 170:13-18.

Therefore, Imersion's motion to exclude is granted with respect to issues related to the Rogers County database.

### D. Testimony Regarding Communications

In his report, Haynes summarizes communications between ODA, Imersion, Courthouse Direct and the Oklahoma Abstracting Board. Ex. 1 at 7-12. During his deposition, Haynes admitted that "a lot" of the summary was drafted by counsel for ODA. Imersion seeks to preclude

---

[3] For her part, Cheryl Jones testified that other than having seen it demonstrated once, she has no experience with the CourthouseDirect.com system, is not an abstractor and has never actually built abstracts before. Jones Dep. 106:7-14; 45:5-6, 47:5-10, 48:19-22.

Haynes from testifying to these communications because he would be merely "rubber-stamping" what he was told by Plaintiff. The Court agrees. Presumably, ODA has fact witnesses who are capable of testifying about pertinent communications between the parties. Accordingly, Haynes will not be permitted to testify as to communications between ODA, Imersion, Courthouse Direct and the Oklahoma Abstracting Board.

### E. Testimony Regarding Work Performed After Submission of Expert Report

Having ruled that Haynes will not be permitted to testify as an expert regarding any of the above topics, the Court concludes that Imersion's motion to exclude Haynes' testimony about work he performed after submission of his expert report is moot.

## IV. Conclusion

For the reasons set forth above, Imersion's Motion to Exclude Opinion Testimony of Chaney Haynes (Doc. 41) is granted.

ENTERED this 9th day of December, 2019.

_____
TERENCE C. KERN
United States District Judge