# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

OKLAHOMA DIGITAL ABSTRACT, LLC, )
                                                            )
          Plaintiff, )
                                                            )
v.                                                            )
                                                            )   Case No. 18-CV-398-TCK-JFJ
IMERSION GLOBAL INCORPORATED, )
                                                            )
          Defendant, )
                                                            )
                                                            )

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant Imersion Global Incorporated ("Imersion"). Doc. 40. Plaintiff Oklahoma Digital Abstract, LLC ("ODA") opposes the motion. Doc. 47.

**I. Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant' claim, "but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exit, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

## II. Material Facts

Imersion was founded in 2010 by Anil K. Adoni ("Adoni") to provide services in the title industry. Doc. 40, Ex. 1, Adoni Dep. at 15:5-6, 16:5-8. A title plant is a depository of all of the land documents of a particular county indexed by the fields set out by the client to search them and find them. *Id.* at 24:7-11. As part of the indexing process, Imersion utilizes a team of employees located in India to review document records and create an electronic index of the applicable fields. *Id.* at 21:5-11; 30:17-24. Imersion has previously indexed documents for more than 60 title plants in Texas and New Mexico, and has assisted in indexing documents for title plants in Arkansas, Michigan and Belize. *Id.* at 21:5-11; 30:17-24.

On or about March 25, 2014, ODA and Imersion entered into contracts for the indexing of abstract plants in Wagoner County and Rogers County, Oklahoma. *Id.*, Ex. 2, Junker Dep. at 39:17-41:2 and Exs. 2 and 3 thereto. At Imersion's suggestion, ODA entered into a separate contract with CourthouseDirect.com, Inc. ("CourthouseDirect") for use of that company's software platform to house the indexes Imersion created. *Id.*, Ex. 2, Junker Dep. at 86:12-14; Ex. 1, Adoni Dep. at 50:25-51:7.

The two Imersion contracts described the "scope of the project" as follows:

1. Scanning all the documents that are not already scanned by the County in the County and District Clerk's office.
2. Acquire all the data that is already scanned in both the offices.
3. Convert all images if required and then staple all the images as per the document number of the scanned and the acquired (scanned) images from the County
4. Index all the documents as per the indexing rules for the scanned images
5. Index all the gaps that the County missed indexing (if any)
6. Give an estimate for day forward indexing to keep them current to one week[1]
7. Give hosting solutions.

Doc. 73, Exs. 2, 3. The total cost for imaging Wagoner County documents was estimated to be $285,506.67. *Id.*, Ex. 2. The total cost for imaging Rogers County documents was estimated to be $343,975.75. *Id.*, Ex. 3. Payment terms were described as:

Image Stapling:

Monthly invoices on total images stapled and delivered

Document indexing for County Clerk's office:

Once the total for this project is finalized we will split the payment into 8 equal payments and the project will start when the 1st check is received.

Document stapling/naming/indexing at District Clerk's office:

This number is not known at the moment and will be billed as and when the documents are scanned at the District Clerk's office.

---

[1] The agreement has a hand-written note initialed by Imersion principal Dax Junker stating that day forward indexing was "subject to future negotiations." Doc. 73, Ex. 2.

3

*Id.* The agreements provided that payment was due on receipt of invoices via direct bank transfer (ACH transfers). *Id.*

Imersion completed indexing of all data it initially received for Wagoner and Rogers Counties in February 2015, at which time Wagoner County records were uploaded to the CourthouseDirect platform and Rogers County records were ready to be uploaded. Doc. 47, Statement of Additional Material Fact 16.[2]

The Rogers County index was never loaded onto the CourthouseDirect platform. According to Junker, "[W]e decided that we were going to hold off on testing Rogers indexing just to focus on getting Wagoner up and running," because "we were running into limited funds so we wanted to get one online before we moved to the next." Doc. 40, Ex. 2, Junker Dep. at 103:23-104:9.

In February 2016, Randy Dittmann purchased a majority interest in ODA. *Id.*, Ex. 3, Damon Bedell Dep. at 66:25-67:2; Ex. 4, Dittmann Dep. at 80:21-81:2. Dittmann also owns American Eagle Title Insurance Company, Logan County Abstract Company, Lincoln County Title, Union Creek Abstract Company, Buffalo Land Title and Frisco Title Company. Doc. 47, Ex. 7, Dittmann Affidavit, ¶2. ODA minority co-owner Damon Bedell owns Apex Title & Closing Services, LLC. *Id.*, ¶4. Dittmann has testified that the entities he and Bedell own would have placed all abstract orders and final title evidence orders with ODA if the Wagoner and Rogers County databases been operational in 2017 and 2018. *Id.*, ¶11. Those orders, which were instead placed with other abstract companies, totaled $1,449,758.32. *Id.*[3]

---

[2] ODA contends Imersion received "all data" at that time. Imersion disagrees, arguing that only data it "initially received" was uploaded. This dispute is not material to the pending motion.
[3] In its original response to an interrogatory about damages, Imersion claimed lost profits of $3,561,600.00. Doc. 47, Ex. 7, Dittmann Affid., ¶11. Subsequently Imersion lowered the lost profit figure to $1,449,758.32. *Id.*

At the time Dittmann acquired his interest in ODA in February 2016, the company owed delinquent payments to Imersion. *Id.*, Ex. 3, Bedell Dep. at 63:23-64:7; 65:6-10 and Ex. 12 thereto; Ex. 4, Dittmann Dep. at 92:8-21. The outstanding invoices were paid by check in March 2016. Doc. 47, Ex. 5.

ODA continued testing the data and communicating and working with Imersion through late September 2016, when it terminated the relationship and retained eData (f/k/a Tricom) to perform indexing going forward. Doc. 40, Ex. 4, Dittmann Dep. at 81:18-82:7, 100:22-101:6; Ex. 5, Jones Dep at 105:4-16; Doc. 47, Ex. 6, September 29, 2015 Email from Jones to Anil Adoni.

After its relationship with Imersion was terminated, ODA was the victim of a cyber attack which left it unable to conduct operations for six or seven months. Doc. 55, Ex. 2, Cheryl Jones Dep., 148:24-149:9.

To date, neither of ODA's abstract plants have been certified by the Oklahoma Abstractor's Board. *Id.*, Ex. 7, Dittmann Affid., ¶11.-132:2.[4] However, ODA applied for certification of the Rogers County database on October 8, 2019, and it anticipates applying for certification of the Wagoner County database in April 2020. Doc. 47, Ex. 7, Dittmann Affidavit, ¶¶ 6, 9, 10.

ODA seeks the following damages:

- $677,128.22 in amounts paid to Imersion
- $118,686.10 for amounts paid to eData to properly index Wagoner County documents
- $151,012.98 for amounts paid to eData to properly index Rogers County documents
- $212,087.62 for amounts paid to employees in 2016 and 2017 to correct Imersion errors

---

[4] In his deposition, Dittmann testified that ODA had previously filed for certification of Rogers County plant, but halted the certification because it discovered a number of books and pages were missing. Doc. 55, Ex. 3, Dittmann Dep. at 128:2-21.

- $1,449,785.32 for total lost profits for 2017 and 2018 for both the Wagoner and Rogers County abstract plants.

Doc. 47, Ex. 7 Dittmann Affid., ¶11.

## III. Analysis

Imersion argues it is entitled to summary judgment on all of ODA's claims on the following bases:

- ODA's breach of contract claims against it are barred due to ODA's prior material breach;
- Imersion is not liable for breaching the Rogers County contract because ODA instructed it to cease work on the project; and
- ODA's claimed "Lost Business Profits" are not recoverable under Oklahoma law.

### A. Prior Material Breach

Imersion asserts that ODA's claims for breach of contract are barred because at the time Dittmann gained control of ODA in 2016, it was delinquent on payments to Imersion. The defense of "prior material breach" is based on the principle that "a party's failure to perform its obligation under a dependent covenant results in the suspension of the complying party's obligation to perform under the agreement." *Teran v. GB International, S.p.A.,* 652 Fed. Appx. 660, 669 (10th Cir. 2016) (unpublished) (citing 14 Williston on Contracts § 43:5 (4th ed.) and Restatement (Second of Contracts § 237 (Am Law Inst. 1981)). Here, it is undisputed that Imersion completed its indexing by February 2015. Doc 47, Ex. 4, Rogers County invoice. Thus, ODA's alleged indexing errors and omissions had already occurred before the two unpaid invoices were submitted. Moreover, the undisputed facts establish that the invoices were paid in March 2016— one month after Dittmann took over ODA, and well before the August 1, 2018 filing of this lawsuit. Finally, Imersion's acceptance of payment of the delinquent invoices and its continued work on the project waived any breach. *See E.V. Cox Construction Co. v. Brookline Associates*, 604 P.2d

867, 871 (Okla. Ct. Civ. App. 1979) (in suit by general contractor against project owner for amounts contractor claimed were owed under construction contract, the project owner, by continuing to pay contractor despite delays in completion of construction, waived claims that general contractor breached contract by failing to complete project within time limit).

Accordingly, the Court rejects Imersion's argument that ODA's claim is barred by its late payment of outstanding invoices.

### B. Preclusion

Imersion also contends it cannot be held liable for failing to complete the Rogers County database because ODA instructed it to stop work on the Rogers County database and focus solely on Wagoner County database, and subsequently terminated the parties' contract before Imersion could resume work on the Rogers County database. Doc. 40 at 7. However, the evidence establishes that the initial indexing of Rogers County was completed by February 2015, and that ODA decided to delay testing the Rogers County indexing in order to focus on getting the Wagoner County index up and running. *See* Doc. 47, Ex. 4, Rogers County Invoice; Ex. 3, Doc. 40, Ex. 2, Junker Dep. at 103:23-104:9. Material issues of fact remain concerning whether Imersion breached the contract and/or whether conduct by ODA prevented Imersion from completing its work.

### C. Recoverability of Lost Business Profits

Oklahoma law allows for recovery of anticipated lost profits if the loss is "capable of *reasonably accurate measurement or estimate.*" *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1178 (10th Cir. 200) (emphasis in original) (citing *Digital Design Group, Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 844 (Okla. 2010); *Florafax Int'l, Inc. v. GTE Mkt. Rs., Inc.*, 933 P.2d 282, 292 (Okla. 1997 and 23 O.S. § 21)). To prevail on a lost profits claim, a plaintiff must

7

establish that (1) the loss was contemplated by the parties; (2) the loss flows directly from the breach or incident; and (3) the damages claims are a reasonably accurate measurement of the loss. *Specialty Beverages*, 537 F.3d at 1179; *Florafax*, 933 P.2d at 292. *See also Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) (To recover damages for lost profits, plaintiffs must demonstrate "the fact of damage . . .with reasonable certainty," and the "amount of damages may not be based upon mere speculation and conjecture." (quoting *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425-26 (10th Cir. 1952)).

Citing *Yeary v. City of Grove*, 11-CV-472-GKF-PJC, 2013 WL 139810 (N.D. Okla. January 10, 2013),[5] Imersion argues that ODA's claim for lost profits is entirely speculative because to date, neither the Wagoner County nor the Rogers County abstract plants have been certified by the Oklahoma Abstractor's Board, nor have they commenced operations.

The Court disagrees. Although ODA has not previously operated abstract businesses in Wagoner and Rogers Counties, its lost revenue figure is based on the volume of orders that title companies owned by Dittmann and Damon Bedell—ODA's owners—actually sent to Wagoner and Rogers County abstract companies in 2017 and 2018. Thus, ODA's lost profit claim is not

---

[5] In *Yeary*, the Court granted defendant's motion for summary judgment on plaintiffs' claim for lost profits from a truck accessories and trailer business they anticipated opening on their land. Plaintiffs had previously operated the business in Joplin, Missouri, and planned to move part of the business to land they owned in Grove. *Id* at *1. In 2009 they hired a contractor to construct and install electrical, gas and water lines on the Grove Property. *Id.* During excavation, the contractor discovered he was in a septic tank lateral line field. He knew the water line he was installing was required by state regulations to be at least 15 feet from the septic tank lateral line field, and the water line was only five feet from the lateral lines, but proceeded with installation of the water line because "there wasn't 15 feet left in the property." *Id.* Subsequently, the City installed a water meter at a location designated by Nelson. *Id* at *2. After the problem was later discovered, plaintiffs hired another contractor to install a new water line, and sued the contractor and the City of Grove, claiming damages for, *inter alia*, lost profits. The Court granted the City's motion for summary judgment because plaintiffs failed to establish the second and third elements of a lost profit claim, *i.e.*, that their loss flowed directly from the incident and were a reasonably accurate measurement of the loss.

based on "mere speculation and conjecture." Further, ODA has presented evidence that it applied for certification of the Rogers County database on October 8, 2019 and anticipates applying for certification of the Wagoner County database in April 2020.

Imersion's argument merely goes to the weight that should be given to ODA's evidence of lost profits, and that is a question for the jury to resolve.

## IV. Conclusion

For the reasons set forth above, Imersion's Motion for Summary Judgment (Doc. 40) is denied.

ENTERED this 19th day of December, 2019.

TERENCE C. KERN
United States District Judge