# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

OKLAHOMA DIGITAL ABSTRACT, LLC,  )
an Oklahoma limited liability company,  )
                                        )
        Plaintiff,  )
                                        )
v.                                      )   Case No. 18-CV-398-TCK-JFJ
                                        )
IMERSION GLOBAL INCORPORATED.,          )
a Texas corporation,                    )
                                        )
        Defendant.  )

## OPINION AND ORDER

Before the Court is the Motion to Exclude Certain Opinion Testimony by Defendant Imersion Global Incorporated's Expert Witness Terri Parrish ("Parrish") (Doc. 39) filed by Plaintiff Oklahoma Digital Abstract, LLC ("ODA"). Defendant Imersion Global Incorporated ("Imersion") opposes the motion. Doc. 49.

**I. Background**

On October 16, 2013, ODA and Imersion entered into two letter agreements, pursuant to which Imersion was to assist ODA in developing abstract plants in Wagoner County and Rogers County, Oklahoma. Imersion was tasked with, *inter alia*, taking scanned images of real property records provided by ODA and creating an electronic index of those documents. Plaintiff contracted with CourthouseDirect.com, Inc. ("CourthouseDirect.com") to use a software platform created by CourthouseDirect.com for hosting the indexes.

Imersion loaded the Wagoner County index onto the CourthouseDirect.com platform. However, in February 2016, before the Rogers County index could be completed and uploaded to

the CourthouseDirect.com platform, control of ODA was transferred to Randy Dittmann. At the time, Dittmann controlled several other Oklahoma abstract plants which utilized a software platform known as halFILE. Dittmann decided that the Rogers County and Wagoner County indexes should use the halFile platform instead of the CourthouseDirect.com platform. Subsequently, Plaintiff ceased all communications with Imersion, and on August 1, 2018, it filed suit against Imersion and its principal, Anil K. Adoni.[1] In its Complaint, ODA asserts that because of high error rates in the electronic index of documents Imersion created, and Imersion's failure to correct those errors, ODA had to hire eData Services, U.S., LLC ("eData") to complete the services; that eData will have to rekey all of the Rogers County and Wagoner County documents and ensure that the stapling was correct; and that ODA anticipates paying hundreds of thousands of dollars to correct the errors.

Imersion's expert, Parrish, was tasked with reviewing the sufficiency of the abstract plants Imersion prepared for Wagoner County and Rogers County, and determining whether they appeared to meet the requirements of the Oklahoma Abstractors Board. At the conclusion of her review, Parrish opined (i) that she would have recommended that the Wagoner County database be certified and (ii) that while the Rogers County database was not complete, it "was progressing in a reasonable manner which could have resulted in a process that would have met the qualifications of the rules and laws of the Oklahoma Abstractors Board resulting in the potential for Certificate of Authority being issued." Doc. 49, Ex. 1, Parrish Letter of August 28, 2019, p. 8.

---

[1] The Court granted Adoni's Motion to Dismiss the claim against him on November 26, 2019. Doc. 67.

ODA challenges Parrish's methodology and conclusions, arguing that she applied an erroneous standard of what search features a digital abstract plant must have to meet the statutory requirements of Oklahoma law.

The requirements for an abstract plant are set out in 1 O.S. § 21(2), which states:

2. "Abstract plant" shall consist of a set of records in which an entry has been made of all documents or matters which legally impart constructive notice of matters affecting title to real property, any interest therein or encumbrance thereon, which are filed, recorded and currently available for reproduction in the offices of the county clerk and the court clerk in the county for which such abstract plant is maintained. Such records shall consist of:

    a. an index in which notations of or references to any documents that describe the property affected are included, according to the property described or in which copies or briefs of all such documents that describe the property affected are sorted and filed according to the property described, which is compiled from the instruments of record affecting real property in the county offices and not copies or reproduced from any county index; and

    b. an index or files in which all other documents, pending suits affecting real property and liens, except ad valorem taxes and special assessments, are posted, entered, or otherwise included, according to the name of the parties whose title to real property or any interest therein or encumbrances thereon is affected, which is compiled from the instruments of record affecting real property in the county offices and not copied from any county index.

Parrish conducted searches to show whether specific documents from Wagoner County could be found on the CourthouseDirect.com database created by Imersion. ODA argues that in Oklahoma "abstracts are always built by searching the legal description for documents that are not identified," and "Parrish's methodology (looking on CourthouseDirect.com for identified documents) does not prove her conclusion (that Courthouse Direct can use searches by legal description to retrieve all documents needed to build an abstract)." *Id.*

## II. Applicable Law

Federal Rule of Evidence 702 ("Rule 702") provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   (b) the testimony is based on sufficient facts or data;
   (c) the testimony is the product of reliable principles and methods; and
   (d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). These gatekeeper duties require the Court to determine both (1) that the expert witness is qualified to offer the opinions he or she is espousing and (2) that the proponent of the expert witness has proved by a preponderance of the evidence that expert's opinions are both relevant and reliable. *Kumho Tire*, 526 U.S. at 141, 152. When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); FED. R. EVID. 104(a).

"Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology renders the expert's testimony inadmissible." *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003).

This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Dodge v. Cotter Corporation,* 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Kumho Tire*, 526 U.S. at 150). "[T]he test of reliability is 'flexible,' and *Daubert's*

list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire, Id.* at 141-42 (emphasis in original).

**III. Analysis**

ODA challenges the relevance and reliability of Parrish's opinion, arguing that her methodology is faulty. Citing 1 O.S. § 21(2), it asserts that in Oklahoma, an abstract is built by (1) searching the index of the abstract plant for a property by its legal description, and then (2) searching the index of the abstract plant for the names of all parties identified in the documents returned by the first search in order to ensure that there are no encumbrances which may affect the title. It argues that Parrish's methodology—which focuses only on documents that describe the property and are sorted and filed according to the property (per 1 O.S. § 21(2)(a))—ignores documents described in § 21(2)(b)—an index or files in which other documents, pending suits affecting real property and liens—are filed. ODA also challenges Parrish's opinion that the 4.7 percent error rate in the documents she found is well within the norms of "human error" and should be ignored.

**A. Methodology**

Parrish used the following methodology to evaluate the plant in Wagoner County: At the Wagoner County Clerk's office, she performed 10 to15 traditional searches by legal description,[2] two of which reflected the chain of title back to sovereignty. Doc. 62, Ex. 1, Parrish Dep.at 18:10-

---

[2] In her deposition, Ms. Parrish testified that she performed five searches by lot and block number and five searches by section, township and range. Doc. 62, Ex. 1, Parrish Dep. at 15:8-25. However, in her report, she stated that she performed eight lot and block number searches and seven metes-and-bounds searches. *Id.*, Ex. 2, Parrish Report at p. 7.

19:22. She took handwritten notes of the documents identified in these searches and then, working from her home computer, attempted to pull those documents up using Imersion's CourthouseDirect.com digital platform. *Id.* at 14:9-15. She did not, however, attempt to build an abstract by entering a legal description into the CourthouseDirect.com database and obtaining a spreadsheet of all documents required to create a digital abstract. *Id.* at 29:15-24; 44:11-14; 77:11-16.

Because data from Rogers County had not yet been loaded onto the CourthouseDirect.com platform, Parrish could not use the same methodology that she used for Wagoner County. Doc. 62, Ex. 2, Parrish Report, p. 7. Therefore, she pulled 50 documents from the county clerk's office and court clerk's office and checked to see if the documents could be located on an Excel spreadsheet furnished to her by Imersion. *Id.* She reported that she was able to find all 50 documents on the spreadsheet. *Id.*

Parrish testified that "paper" abstracts are built by searching the county clerk's tract books by legal description and noting deeds and conveyances, as well as the names of persons listed on those documents. *Id.*, Ex. 1, Parrish Dep. at 63:11-64:24. Then the names are used to check the court clerk's documents for additional instruments that need to be included in the abstract. *Id.*, 63:24-64:2.

ODA argues that Parrish "lower[ed] the bar" below the requirements set by § 22(2) by concluding Imersion's indexes were adequate because she could locate all the documents she set out to find "either by legal description, grantor-grantee search or by document book and page." *Id.*, Ex. 2, Parrish Report, p. 7. It asserts that her method was backwards and completely unhelpful in determining the quality of the abstract plants at issue because she already knew the documents she was looking for, and then used multiple search methods to find them, which—for the most

6

part—she did. It also points out that Parrish admitted to identifying an error rate of 4.7 percent in the documents she found. While Parrish claims this is well within the norms of "human error" and should be ignored, this is the error rate after multiple rounds of testing and correction of the errors identified by ODA over a period of several years.

B. Discussion

Parrish's first opinion addresses the question of whether the Wagoner and Rogers County databases would meet the requirements of the Oklahoma Abstractors Board. However, the question framed by Imersion and answered by Parrish—whether the Oklahoma Abstractor Board would now approve the plants and issue Certificates of Authority for them—does not address the principal complaint by ODA—that the database initially put together by Imersion was so riddled with errors, it would not have been certified, and that ODA had to spend a considerable amount of time and money correcting the errors. More fundamentally, and unlike the process of actually creating a database, Parrish already knew what documents she was looking for. Therefore, her methodology does not address the sufficiency of Imersion's work with respect to the requirements of § 21(2)(b)— that is, creation of an index or files in which other documents, pending suits affecting real property and liens—are filed. These documents are essential to locating documents that might not have been located in the search for documents described in § 21(2)(a).

Moreover, Parrish's second opinion—that the 4.7 percent error rate in the 1,000 Wagoner County documents she set out to find did not affect her ability to locate the documents, and was an acceptable error rate—is also based on flawed methodology. This is the error rate after extensive work by ODA and Imersion (at ODA's expense) to correct errors in Imersion's work. ODA's complaint is that the original error rate was unacceptably high, and required extensive correction that cost ODA in terms of time and money.

7

## IV. Conclusion

For the reasons set forth above, ODA's Motion to Exclude Certain Opinion Testimony by Defendant Imersion Global Inc.'s Expert Witness Terri Parrish (Doc. 39) is granted.

ENTERED this 27th day of December, 2019.

TERENCE C. KERN
United States District Judge